The GRAND UNION COMPANY, Plaintiff-Appellant,

v.

CORD MEYER DEVELOPMENT COR-PORATION and King Kullen Grocery Company, Inc., Defendants-Appellees.

No. 953, Docket 83–9068.

United States Court of Appeals, Second Circuit.

Argued March 30, 1984.

Decided May 23, 1984.

Alan M. Goldston, New York City (Paskus, Gordon & Hyman, New York City, David S. Klafter, New York City, of counsel), for plaintiff-appellant.

John M. Armentano, Mineola, N.Y. (Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, P.C., Mineola, N.Y., Alfred J. Swan, Steven L. Herrick, New York City, of counsel), for defendant-appellee King Kullen Grocery Company, Inc.

Maggin & Swan, New York City, for defendant-appellee Cord Meyer Development Company.

Before KAUFMAN, KEARSE and PIERCE, Circuit Judges.

PER CURIAM:

This is an appeal from a judgment of the District Court for the Eastern District of New York, Nickerson, *Judge*, entered on December 28, 1983, granting defendants-appellees' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and dismissing plaintiff-appellant's complaint. For the following reasons, we reverse and remand.

## BACKGROUND

Plaintiff-appellant The Grand Union Company ("Grand Union") is in the business of owning and operating supermarkets in the eastern section of the United States. Defendant-appellee Cord Meyer Development Corporation ("Cord Meyer") is in the business of real estate development and ownership, and defendant-appellant King Kullen Grocery Company, Inc. ("King Kullen") is in the business of owning and operating supermarkets throughout the Long Island and metropolitan New York areas. Cord Meyer is the owner of a shopping center located at Bell Boulevard and 26th Avenue in Bayside, County of Queens, New York, known as the Bay Terrace Shopping Center. Grand Union operates a supermarket in the shopping center, which it obtained as the successor in interest to Sunrise Supermarkets Corporation as tenant under a lease with Cord Meyer.

The lease between Cord Meyer and Sunrise Supermarkets Corporation, dated September 22, 1958, was for an original term of fifteen years commencing February 9, 1960. Article 39(b) of the lease provides, in pertinent part, "[t]hat during the occupancy of the demised store premises by the Tenant under this lease, Landlord agrees that it will not rent any other store in said shopping center as a supermarket, grocery, fruit, vegetable, dairy and/or non-Kosher butcher." Article 40 of the lease provides, in pertinent part, that "[t]he Tenant shall have the option to renew this lease for a further period of ten (10) years upon the same terms and conditions as herein stated, except that the rent fixed herein shall not be the rent for the renewal term."

On June 3, 1975, Grand Union and Cord Meyer entered into an agreement modifying the original lease entitled "Modification of Lease" (the "Modification Agreement"). Paragraphs three, four and five, central to the dispute before this court, state:

3. Paragraph 40 of the Lease shall be deemed amended so as to give Tenant the right and option to extend the demised term for two additional periods of five (5) years each (the "Extended Terms") on the same terms, provisions and conditions (except that the minimum rental shall be adjusted as provided in Article 40) as contained in the Lease. Tenant may exercise either or both of the said options to extend the demised term by giving to Landlord a written notice thereof not less than six (6) months prior to the scheduled date for termination of the then applicable demised term or first Extended Term. Tenant shall have no right to extend the term of this Lease beyond February 8, 1995. The minimum rental for each of the Extended Terms, adjusted pursuant to the provisions of Article 40 of the Lease, shall in no event be less than Seventy-seven Thousand Five Hundred ($77,500.00) Dollars for the first Extended Term, or less than the minimal rental being paid by Tenant during the last year of the first Extended Term with regard to the adjusted minimum rental of the second Extended Term. Any adjustment of the minimum rental for either of the Extended Terms, as aforementioned, shall continue during the entire subsequent applicable Extended Term.

4. In the event that Tenant exercises either or both of its options for an Extended Term or Extended Terms as set forth in Article [3] hereof, the restrictive covenants in favor of the Tenant and against the Landlord as contained in Article 39(b) and 39(c) of the Lease are hereby modified to permit a supermarket, grocery, fruit, vegetable, dairy, non-kosher butcher, or other store with a selling area of more than 2,000 square feet as a delicatessan, kosher butcher (meat and poultry) or appetizing to be leased by Landlord in the portion of the existing shopping center presently used as a bowling alley or in any new buildings hereafter added to the presently undeveloped portion of the existing shopping center provided, however, that:

(a) Landlord shall not initiate or conduct any negotiations for the leasing or occupancy by Landlord or others concerning any of the aforesaid uses to

any person or entity prior to August 9, 1984; and

(b) None of the aforesaid uses shall commence or be permitted by Landlord to commence prior to February 9, 1985; and

(c) The restrictions against the Landlord and in favor of Tenant as set forth in Articles 39(b) and 39(c) shall apply during either or both of the Extended Terms (if options for the same are exercised by Tenant) with respect to the presently existing constructed portions of the shopping center (or any replacements of such existing construction in the shopping center, or any temporary buildings in the presently developed portions of the shopping center) of which the demised premises are a part, except that subject to the conditions of subparagraphs (a) and (b) above, a supermarket may be located in the portion thereof presently used as a bowling alley; and

(d) In all other respects, Article 39 shall continue in full force and effect during the Extended Term or Extended Terms of the Lease.

5. Except as to the foregoing, in all other respects the terms, provisions and conditions of the Lease shall remain in full force and hereby ratified and confirmed by the parties hereto.

In 1982, Cord Meyer began negotiations with King Kullen, another supermarket chain, for a lease of the space in the shopping center formerly used as a bowling alley. These negotiations culminated in the execution of a lease on February 14, 1983, retroactive to February 1, 1983, pursuant to which King Kullen is scheduled to commence operation of a supermarket in the former bowling-alley space on February 9, 1985.

Grand Union filed a complaint against Cord Meyer and King Kullen on June 17, 1983. Grand Union sought to compel specific performance of the restrictive covenant in the lease between it and Cord Meyer, to restrain and enjoin Cord Meyer and King Kullen from continuing the performance of the lease between them, and to declare that lease null and void; sought a declaration construing the rights and obligations of all the parties; and sought actual and punitive damages for the tortious interference by King Kullen with Grand Union's rights under the lease between it and Cord Meyer.

On August 9, 1983, Cord Meyer and King Kullen filed motions to dismiss Grand Union's complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted.

After receiving affidavits and memoranda of law, and hearing oral argument regarding the motions to dismiss, the district court issued a memorandum and order granting the motions to dismiss and dismissing the complaint. The district court entered judgment on December 12, 1983, Grand Union filed a notice of appeal, and this appeal followed.

## DISCUSSION

Grand Union contends that the motions to dismiss should have been treated as motions for summary judgment because the parties submitted affidavits in support of their respective positions. We agree. Federal Rule of Civil Procedure 12(b) states in pertinent part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Here, Grand Union presented an affidavit opposing the motions to dismiss presented by King Kullen and Cord Meyer. Further, Cord Meyer presented an affidavit supporting its motion to dismiss, which was joined by King Kullen. The docket sheet confirms that the district court accepted these affidavits; however, we have no indication that the district court excluded from con-

sideration the matters outside the pleadings presented by way of the affidavits. Under these circumstances, the motions to dismiss should have been treated as motions for summary judgment. *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam); *Freeman v. Marine Midland Bank-New York,* 494 F.2d 1334, 1338–39 (2d Cir.1974); *Thompson v. New York Central Railroad Co.,* 361 F.2d 137, 138–39 (2d Cir.1966); *Hirsch v. Archer-Daniels-Midland Co.,* 258 F.2d 44, 45–46 (2d Cir.1958).

■ Analyzed under summary judgment principles, the district court's judgment must be reversed. Federal Rule of Civil Procedure 56(c) precludes the grant of summary judgment unless there is no genuine issue as to any material fact, *see Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 444 (2d Cir.1980), and unless the moving party is entitled to a judgment as a matter of law. *Battery Steamship Corp. v. Refineria Panama, S.A.,* 513 F.2d 735, 738 (2d Cir.1975). The moving party has the burden of demonstrating the absence of any genuine, material factual issue. *Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 9 (2d Cir.1983). Moreover, as we have stated previously, " '[O]n a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried,' " *id.* (quoting *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975)).

The district court found that the disputed language in the Modification Agreement was "plain enough" and found "no reason not to give it effect." Grand Union, asserting that the Modification Agreement is at least ambiguous and at best supports the merits of its position, argues that it has not exercised paragraph 4 of the Modification Agreement regarding the options for Extended Terms, that the restrictive covenant contained in paragraph 39(b) of the lease remains in force, and that notwithstanding paragraph 4(a) of the Modification Agreement, Cord Meyer conducted negotiations with King Kullen to lease the portion of the shopping center previously used as a bowling alley. Grand Union asserts that this sequence violated the condition set forth in paragraph 4(a) of the Modification Agreement that prohibits Cord Meyer from negotiating with any party regarding a lease on the bowling-alley space as a supermarket prior to August 9, 1984. Further, Grand Union urges us to consider its view of the purpose of the Modification Agreement. Cord Meyer and King Kullen likewise argue their view of the purpose of the Modification Agreement while contending that its disputed language is clear and unambiguous. However, we need not address the merits of these respective positions. *Alexander v. Unification Church of America,* 634 F.2d 673, 679 (2d Cir.1980). We hold only that summary judgment should not have been granted for Cord Meyer and King Kullen because the disputed language in the Modification Agreement is ambiguous, it supports the fairly reasonable interpretation of both sides, and it creates a genuine issue of material fact regarding the intent of the parties at the time the Modification Agreement was contracted. *Schering Corp.,* 712 F.2d at 9; *Heyman,* 524 F.2d at 1320. The parties should be permitted to present extrinsic evidence; therefore, any grant of summary judgment for the defendants would be improper.[1] *Schering Corp.,* 712 F.2d at 9.

---

1. We note that the result would not change if the district court had excluded the affidavits from consideration. Federal Rule of Civil Procedure 12(b)(6) provides that a defense of failure to state a claim upon which relief can be granted may be made by motion. It is well-established "that a complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *McLain v. Real Estate Board of New Orleans,* *Inc.,* 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (quoting in part *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)); *see also Wade v. Johnson Controls, Inc.,* 693 F.2d 19, 22 (2d Cir.1982). " 'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 895 (2d Cir.1976) (quoting *Scheuer v.*

## CONCLUSION

We reverse and remand for further action consistent with this opinion. The district court is instructed to schedule promptly any necessary pre-trial matters and to set a date for trial reasonably in advance of the August 9, 1984, date set forth in the Modification Agreement.

Reversed and remanded.

*Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). Herein, Grand Union presented a state of facts in its complaint that could, if proven in support of its claims, entitle it to relief. Therefore, Grand Union was entitled to a ruling in its favor regarding the motions to dismiss and was entitled to an opportunity to offer evidence to support its claims.